Peña Garcia v. Department of Labor

In the
𝔘nited 𝔖tates 𝔆ourt of 𝔄ppeals
for the 𝔖econd 𝔆ircuit

August Term 2025
No. 23-8066

LUIS PEÑA GARCIA,
*Petitioner*,

*v.*

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, IMS INSURANCE COMPANY OF PUERTO
RICO, CALZADILLA CONSTRUCTION CORPORATION,
*Respondents*.

On Petition for Review from the United States Department of Labor
Benefits Review Board.

ARGUED: NOVEMBER 12, 2025
DECIDED: MARCH 5, 2026

Before:  WALKER, CARNEY, and NARDINI, *Circuit Judges*.

Petitioner Luis Peña Garcia is a resident of Puerto Rico who
sustained work-related injuries in May 1994 that rendered him

permanently disabled.  The United States Department of Labor found that Peña's former employer and its insurance carrier were required to provide him with medical care and treatment pursuant to Section 7 of the Longshore and Harbor Workers' Compensation Act, as extended by the Defense Base Act.  In March 2019, consistent with Puerto Rico's regulatory scheme for physician-recommended medical marijuana, a doctor licensed in Puerto Rico suggested "edibles such as cookies infused with specific dosage of medical cannabis" as treatment for Peña's chronic pain.  Peña subsequently sought reimbursement for these cannabis-infused products, but his request was denied.  He then petitioned the Department of Labor's Office of Administrative Law Judges for an order stating that doctor-recommended medical cannabis treatments are covered under Section 7, but he was again rebuffed on the ground that marijuana's classification as a Schedule I substance under the Controlled Substances Act meant that the drug had no accepted medical use under federal law.  Peña appealed this denial to the Department of Labor's Benefits Review Board, which again declined to order reimbursement of his cannabis-infused edibles.  We agree with this determination, and thus DENY Peña's petition for review.

———————————

EMILIO F. SOLER, ESQ., San Juan, Puerto Rico, *for Petitioner*.

WILLIAM M. BUSH, Attorney, Office of the Solicitor (Jonathan L. Snare, Jennifer Feldman Jones, and Sean Bajkowki *on the brief*), U.S. Department of Labor, Washington, DC, *for Respondent Director, Office of Workers' Compensation Programs, U.S. Department of Labor*.

2

Manuel Porro Vizcarra, San Juan, Puerto Rico, *for Respondents IMS Insurance Company of Puerto Rico and Calzadilla Construction Corporation*.

WILLIAM J. NARDINI, *Circuit Judge*:

Petitioner-Appellant Luis Peña Garcia (Peña) initiated the present action to obtain an order from the United States Department of Labor ("DOL") requiring his former employer and its insurance carrier to reimburse the costs of medicinal cannabis-infused edibles under Section 7 of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 907, as extended by the Defense Base Act ("DBA"), 42 U.S.C. §§ 1651–1654. This Section requires employers to "furnish" eligible workers injured on the job with "medical, surgical, and other attendance or treatment . . . for such period as the nature of the [covered] injury . . . may require." 33 U.S.C. § 907(a). The DOL denied this request on the ground that marijuana is classified as a Schedule I substance under the Controlled Substances Act ("CSA"), 21 U.S.C. § 812, and thus cannot have any accepted medical use as a matter of federal law. By a 2-1 vote, the DOL's Benefits Review Board affirmed this decision. We agree with the determination of the Benefits Review Board, and therefore DENY Peña's petition for review.

## I. Background

Peña is a resident of Puerto Rico who sustained work-related injuries to his neck, back, and upper and lower extremities in May 1994, resulting in permanent total disability. On December 29, 1998, the DOL found that Peña's former employer and its insurance carrier were required to provide him with medical care and treatment pursuant to Section 7 of the LHWCA, as extended by the DBA.[1]

On March 23, 2019, Dr. Michael Soler, a physician licensed to practice in Puerto Rico, observed the following:

> [Peña] has steadily responded well and with no complications to edibles such as cookies infused with a specific dosage of medical cannabis for over one year. This seems to be one of the only treatments that best works for [Peña] at night time due to its absorption and dose doubling effect. Please expedite approval in order to avoid discontinuation and patient's decompensation.

App'x at 2. Dr. Soler's request was consistent with Puerto Rican law, which provides that "medical use of cannabis" can be recommended to treat certain conditions established by the Commonwealth's Medical Cannabis Regulatory Board. 2017 P.R. Laws Act 42 (July 9, 2017); *see also* P.R. Regs. SALUD Reg. 9038.

On October 22, 2019, Peña asked IMS Insurance Company of Puerto Rico ("IMS"), the insurance carrier for his former employer

---

[1] The DBA extends the LHWCA to United States territories, including the Commonwealth of Puerto Rico. *See* 42 U.S.C. § 1651(a).

Calzadilla Construction Corporation, to reimburse him for "payment of medical cannabis-infused cookies and edibles as treatment for [his] [chronic] pain and anxiety." App'x at 2. IMS denied this request. Peña then requested a hearing before the DOL's Office of Administrative Law Judges, seeking a determination that doctor-recommended medical cannabis treatments are reimbursable under the LHWCA. On September 15, 2020, an Administrative Law Judge ("ALJ") ruled that marijuana's classification as a Schedule I substance under the CSA necessarily entailed that the drug had no accepted medical use under federal law. Consequently, the ALJ concluded, marijuana could not be a "reasonable and necessary medical treatment" under the LHWCA, and Peña's employer and insurance carrier were not obligated to reimburse him for his cannabis-infused edibles. App'x at 3.

Peña appealed this denial to the DOL's Benefits Review Board. By a 2–1 vote, the Board affirmed the ALJ's decision on the same grounds. It also rejected Peña's argument that Congressional appropriations riders prohibiting the United States Department of Justice ("DOJ") from interfering with state laws facilitating marijuana use rendered the drug a reasonable and necessary medical treatment. A dissenting member of the Benefits Review Board reached the opposite conclusion, reasoning that Dr. Soler's recommendation that Peña use marijuana products to treat his chronic condition created a *prima facie* case for a compensable medical treatment, and that the reference to "medical marijuana" in the appropriations riders was an

5

implicit acknowledgement that marijuana can have medical use. This appeal followed.[2]

## II.    Standard of Review

On this petition for review from the Benefits Review Board, this Court reviews questions of law *de novo* and the ALJ's findings of fact for substantial evidence. *G4S Int'l Emp. Servs. (Jersey), Ltd. v. Newton-Sealey*, 975 F.3d 182, 185–86 (2d Cir. 2020).

## III.    Discussion

Section 7 of the LHWCA requires employers to "furnish" injured workers with "medical, surgical, and other attendance or treatment . . . for such period as the nature of the [covered] injury . . . may require." 33 U.S.C. § 907(a). This Section and its implementing regulations require reimbursement of "all reasonable and necessary medical expenses" for eligible work-related injuries. *Amerada Hess*

---

[2] Peña initially filed this petition for review in the U.S. Court of Appeals for the First Circuit. *See* Dkt. No. 1 at 5–12. However, because review of DBA decisions lies in "the judicial district wherein is located the office of the deputy commissioner whose compensation order is involved," *Serv. Emps. Int'l, Inc. v. Dir., Off. of Workers Comp. Program*, 595 F.3d 447, 452 (2d Cir. 2010) (quoting 42 U.S.C. § 1653(b)), and the DOL's Office of Workers' Compensation Programs' suboffice in New York adjudicated Peña's claim, jurisdiction over Peña's appeal was proper in this Court. Accordingly, the First Circuit transferred the case to the Second Circuit. *See* Dkt. No. 1 at 1–2.

*Corp. v. Dir., Office of Worker's Comp. Programs*, 543 F.3d 755, 761 (5th Cir. 2008).[3]

However, the CSA makes it "unlawful knowingly to manufacture, distribute, or possess with intent to distribute controlled substances." *McFadden v. United States*, 576 U.S. 186, 188 (2015) (citing 21 U.S.C. § 841(a)(1)). "[C]ontrolled substances," for purposes of the CSA, are divided into five schedules. *See* 21 U.S.C. § 812. A drug is classified in Schedule I if (1) it "has a high potential for abuse," (2) it "has no currently accepted medical use in treatment in the United States," and (3) "[t]here is a lack of accepted safety for use of the drug or other substance under medical supervision." *Id.* at § 812(b)(1). Congress currently lists marijuana as a Schedule I drug. *Id.* at § 812(c), sched. I (c)(10).

Peña argues that medical marijuana is a reasonable and necessary treatment for pain management and that he is thus entitled to reimbursement for the drug under the LHWCA. However, this argument is foreclosed by the plain text of the CSA, which states that Schedule I substances, like marijuana, have "no currently accepted medical use in treatment in the United States." *Id.* at § 812(b)(1)(B); *see also id.* at § 812(c), sched. I (c)(10). Indeed, in *Gonzales v. Raich*, the Supreme Court held that marijuana's classification as a Schedule I substance amounts to an express Congressional finding that the drug

---

[3] Other circuits and the Benefits Review Board itself have also adopted the "reasonable and necessary" standard. *See Bath Iron Works Corp. v. Preston*, 380 F.3d 597, 610–11 (1st Cir. 2004); *M. Cutter Co. v. Carroll*, 458 F.3d 991, 993–94 (9th Cir. 2006); *Romeike v. Kaiser*, 22 BRBS 57, at *3 (1989).

has "no acceptable medical uses." 545 U.S. 1, 27 (2005). Federal law thus categorically bars marijuana from being deemed a reasonable and necessary medical expense for purposes of the LHWCA.

Peña's arguments to the contrary are unavailing. To start, Peña contends that annual appropriations riders prohibiting the DOJ from preventing states from implementing laws authorizing the use, distribution, possession, or cultivation of medical marijuana amount to congressional recognition of marijuana's medicinal value. We disagree. These riders govern the manner in which the DOJ spends funds that Congress allocates; they amount only to a constraint on the DOJ's exercise of enforcement discretion. *See, e.g.*, Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235 § 538, 128 Stat. 2130, 2217 (2014). They do not change federal law with respect to controlled substances and cannot be interpreted as having implicitly repealed Congress's statutory classifications of controlled substances in the CSA. *See Me. Cmty. Health Options v. United States*, 590 U.S. 296, 315 (2020) ("This Court's aversion to implied repeals is especially strong in the appropriations context.") (internal quotation marks omitted). Further, the term "medical marijuana" is used in the riders only to describe the nature of state laws, not to alter existing federal law with respect to controlled substances. And finally, the riders say nothing about marijuana's classification as a reasonable and necessary medical expense for purposes of federal workers compensation programs like the LHWCA.

Peña also cites recent actions taken by both the President and Congress as evidence of a more permissive federal policy with respect

to marijuana. However, these actions are unrelated to whether marijuana can be reimbursed under the LHWCA. Specifically, former-President Biden's pardons of individuals convicted of marijuana possession have no effect on statutory provisions regarding the medical value *vel non* of marijuana. *See* Proclamation No. 10467, 87 Fed. Reg. 61441 (Oct. 6, 2022). Similarly, Congress's enactment of a statute that facilitates research into medical marijuana does not amount to a congressional finding of marijuana's medical value; at most, it signals a willingness to explore whether such medical value exists. *See* Medical Marijuana and Cannabidiol Research Expansion Act, Pub. L. No. 117–215, 136 Stat. 2257 (2022). In addition, former-President Biden's directive that the Secretary of the Department of Health and Human Services and the Attorney General initiate a review process for marijuana's classification under federal law, falls far short of a decision to actually reschedule marijuana under the CSA. *See* Statement on Marijuana Reform, Administration of Joseph R. Biden, Jr. (Oct. 6, 2022). So too does President Trump's December 18, 2025, Executive Order directing the Attorney General to "take all necessary steps to complete the rulemaking process related to rescheduling marijuana to Schedule III of the CSA in the most expeditious manner in accordance with Federal law." Exec. Order No. 14370, 90 Fed. Reg. 60541, 60542 (Dec. 18, 2025). As the Executive Order indicates, removing marijuana from Schedule I cannot be done by executive fiat; it requires either an Act of Congress or a duly completed administrative rulemaking proceeding. Neither, to date, has occurred.

9

Peña argues that state law has trended toward reimbursement of claims for medical marijuana in state worker's compensation regimes. Perhaps so. But state policies on medical marijuana bear no relation to whether medical marijuana can be reimbursed under federal law. The Supreme Court in *Gonzalez* acknowledged that where federal regulations of controlled substances are more stringent than state analogs, the restrictions imposed by federal law govern. 545 U.S. at 27–29. The mere existence of more permissive state policies regarding medical marijuana therefore does not constrain federal law. *See id.* at 29 ("The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail.").

Finally, Peña argues that the CSA's criminal prohibition on aiding and abetting the distribution of controlled substances does not implicate his request for reimbursement under the LHWCA. But whether or not the CSA imposes criminal penalties for the reimbursement of medical marijuana is irrelevant. All that matters is marijuana's classification as a Schedule I substance under the CSA, which unequivocally provides, for purposes of federal law, that it has no accepted medical use.

It may very well be the case that the federal government will at some point—perhaps even in the near future—remove marijuana from Schedule I of the CSA. But that is a decision for the political branches of the federal government, not for the judiciary. This Court is obliged to apply the law as it currently stands.

## IV.    Conclusion

Because marijuana is presently classified as a Schedule I substance under the CSA, it cannot be treated as reimbursable medical treatment for purposes of Section 7 of the LHWCA. We therefore DENY Peña's petition for review.